**In re AMERICAN COILS CO.**

No. 10287.

United States Court of Appeals
Third Circuit.

Argued Dec. 7, 1950.

Decided March 5, 1951.

able contract between the claimant and the debtor reducing the claimant's compensation for personal services he would render.

At the time involved, the claimant owned forty shares of the debtor's stock, and was a vice president of the corporation. On December 31, 1946, he entered into a written agreement to serve the debtor as plant superintendent for one year commencing January 1, 1947, at an annual salary of $9,000, payable in weekly installments, plus a bonus of $3500, payable in monthly installments.

On May 2, 1947, the debtor was in financial difficulties and, according to its officers, would have had to close its operations if obliged to continue to meet the full burden of its commitments to its key personnel. As a result of a conference between certain officers of the debtor and its twenty-five key personnel, including the claimant, the key personnel, including the claimant, on that day agreed to accept a reduction in compensation. Thereafter, the claimant as well as the other key personnel received reduced salaries. On October 28, 1947, the debtor filed its petition for reorganization under Chapter X, 11 U.S.C.A. § 501 et seq., and in November, 1947, the claimant's contract was disaffirmed by the Trustee.

The claimant, in the court below, sought to recover the difference between the salary specified in his written contract, and the salary he actually received. He denied that he made an agreement to reduce his salary and asserted that in any event such agreement lacked consideration, hence it is unenforceable.

The controversy was referred to a Referee in Bankruptcy as Special Master. He held that there was an agreement between the debtor and its twenty-five key personnel, including the claimant, to reduce compensation, but concluded that the claimant was entitled to be paid at the rate stated in his written contract because no consideration attended the agreement. The District Court, however, remanded the cause to the Special Master. In his second report, the Special Master found that consideration existed, and denied the claim for additional compensation. Upon exceptions,

Alan V. Lowenstein, Newark, N. J. (Riker, Emery & Danzig and George H. Callahan, all of Newark, N. J., on the brief), for appellant.

Martin Simon, Newark, N. J., for appellee.

Before BIGGS, Chief Judge, and GOODRICH and KALODNER, Circuit Judges.

KALODNER, Circuit Judge.

The issue on this appeal is whether there existed, prior to reorganization, an enforce-

the District Court expressed doubt whether an agreement had been reached, but as-sumed it *arguendo* and held that consideration was absent. The debtor, therefore, prosecuted this appeal from the order of the District Court awarding to the claimant the portion of his salary which he had given up.

We have no difficulty in upholding the Special Master's factual determination that an agreement was reached in May, 1947, between the debtor and its twenty-five key personnel, including the claimant, whereby the personnel and the claimant accepted a reduction in compensation to be paid thereafter. General Order in Bankruptcy No. 47, applicable in reorganization proceedings by reason of General Order No. 52, 11 U.S.C.A. following section 53, authorizes reversal of the factual findings of a referee or a special master only when such findings are "clearly erroneous." We have had occasion to discuss General Order No. 47: In re Wolf, 3 Cir., 1948, 165 F.2d 707; there is no need to repeat what was said in that case. Cf. United States v. U. S. Gypsum Co., 1948, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746; Graver Tank & Mfg. Co., Inc. v. Linde Air Products Co., 1950, 339 U.S. 605, 612, 70 S.Ct. 854, 94 L.Ed. 1097. We rely upon the Special Master in the first instance for the resolution of the conflicting testimony in this case, since he heard and saw the witnesses. And we conclude, on examination of the record, that there is no clear error in the factual findings of the Special Master; rather, there is sufficient credible evidence to support them.

The remaining issue is whether there was consideration for the agreement of May 2, 1947. Since all the operative facts occurred in the State of New Jersey, its law is, of course, decisive. Erie R. Co. v. Tompkins 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. The contract law of New Jersey which is invoked by the facts of this case, however, would appear to be consistent with the law as generally understood. The Coast National Bank v. Bloom, E. & A. 1934, 113 N.J.L. 597, 602, 174 A. 576, 95 A.L.R. 528; see Restatement, Contracts, §§ 75, 76, and 84(b), and the New Jersey Annotations thereto.

It is elementary contract law that the promise of the claimant to accept a reduction in the salary, for work to be done, which the debtor had previously obligated itself to pay would not, without more, create an enforceable contract. But here there was more. The claimant joined with other key personnel to reduce their claims against the debtor; each surrendered a portion of what in law was his for the benefit of all. The promises of the claimant's co-workers were consideration for his own. The Coast National Bank v. Bloom, supra; Daniels v. Hatch, Sup.Ct. 1848, 21 N.J.L. 391; accord, Puller v. Royal Casualty Co., 1917, 271 Mo. 369, 196 S.W. 755; Riera v. Salo Art Metal Co., 1909, 134 App.Div. 497, 119 N.Y.S. 323; Restatement, Contracts, § 84(b), and comment thereto; 1 Williston on Contracts (1936), § 126.

Moreover, it would appear that each employee had a particular interest in aiding the debtor to remain active, for on that depended not simply the completion of the term of his original contract, but also his continuity of employment in the future. And, the plaintiff, as an officer and stockholder of the debtor, had a special benefit to gain from the continued operation of the debtor through the renunciation of a portion of his salary and that of his fellow employees. Only in the continued operation of the debtor could he preserve and perpetuate the integrity and security of his investment. We have no doubt that "He conceived that the continued operation of the * * * (debtor) on a solvent basis would redound to his advantage. He therefore derived a benefit sufficient as a consideration to support the promise. The extent to which * * * (claimant) was benefited is immaterial. A very slight advantage to one party or a trifling inconvenience to the other is a sufficient consideration to support a contract when made by a person of good capacity, who is not at the time under the influence of any fraud, imposition or mistake. Traphagen's Ex'r v. Voorhees, 44 N.J.Eq. 21, 31, 12 A. 895. Whatever consideration a promisor assents to as the price of his promise is legal-

ly sufficient consideration. Legal sufficiency does not depend upon the comparative economic value of the consideration and of what is promised in return. 1 Contracts A.L.I., §§ 76, 81." The Coast National Bank v. Bloom, supra, 113 N.J.L. at page 602, 174 A. 576, 578, 95 A.L.R. 528.

For the reasons stated, the order of the District Court will be reversed.[1]