James E. THACKER, Individually and as
next friend for Jada Thacker, a
minor, Appellants,

v.

J. C. PENNEY COMPANY, Appellee.

No. 16561.

United States Court of Appeals
Fifth Circuit.

April 7, 1958.

Rehearing Denied May 15, 1958.

John J. Watts, Odessa, Tex., for appellant.

William L. Kerr, Midland, Tex. (Turpin, Kerr & Smith, Midland, Tex., of counsel), for appellee.

Before HUTCHESON, Chief Judge, and RIVES and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

James E. Thacker, on his own behalf and as natural guardian and next friend of his child, Jada Thacker, brings this

suit for damages for injuries to his child who fell from a balcony in J. C. Penney's department store in Odessa, Texas. Jurisdiction is based on diversity of citizenship.

The plaintiff-appellant contends that the defendant is liable for breach of its duty to maintain safe premises. The defendant-appellee contends: (1) that the danger was open and obvious and that the existence of such a danger did not shift the care of the appellant's child from his parent to the appellee; (2) if there was a duty upon appellee, it was only to give warning to the child's mother, and the mother's knowledge of the open danger relieved defendant of any liability.

I.

One afternoon in January, 1955, Mrs. James E. Thacker made a shopping trip to the J. C. Penney store to buy her mother a gift. With her was her active young son, Jada, two years and two months old at the time.

In the rear of the store is a balcony about nine feet above the first floor. It runs the width of the store, seventy-five feet, and is forty feet deep. The balcony is protected by an attractively finished railing of oak and tempered masonite, varnished and waxed, three-feet-six-inches high. The railing consists of a base eighteen inches high surmounted by four horizontal bars, suitably spaced, six inches from bar to bar, like the rungs of a ladder, as if designed as a sort of Jungle Jim for young children to climb. On the top rail overlooking the store a small boy would gaze with wonder at the scene below him and feel like stout Cortez [Balboa] silent upon a peak in Darien. This was the setting, as the appellants presented the case.

The appellee takes a dim view of this presentation of the case. The only danger here was the danger of a very young child falling from an ordinary balcony railing commonly found in Penney stores. Mr. Mickey Lavy, manager of the store, testified that the railing was strong and safe and especially constructed to prevent people and merchandise from falling off. The object of using rails instead of a solid wall of the same height was to allow the merchandise to be seen from the ground floor. Mr. Lavy said that he had never had any complaints that the balcony was unsafe for children and he never heard of a child having fallen from the balcony of any Penney store.

The balcony was used for the display and sale of women's clothing. On entering the store, Mrs. Thacker went immediately to the balcony to find a dress for her mother. The purchase was never completed. Jada pulled away from his mother so often, each time going to the railing and climbing it, that Mrs. Thacker gave up finding a dress and carried Jada down to the main floor to a jewelry counter some eighty feet from the staircase.[1] She placed Jada on the floor between her and the jewelry counter. After about ten minutes Mrs. Thacker became conscious of the fact that Jada was not in sight. She looked behind counters, heard a cry, saw a crowd near the staircase, and found her child on the floor beneath the balcony. No one saw him fall. No one saw him moments before the fall. Jada fell on his head and suffered a severe cerebral contusion and a compound fracture of the right leg.

Appellants extract the last ounce of benefit to their view of the case from the testimony of Mrs. Helen Finley, one of the saleswomen who worked on the bal-

---

1. "A. When I got to the front of the store, I didn't think I would be in danger of the balcony with him, so I sat him on the floor so I could select the jewelry, and I showed her the pieces I wanted, and she began to tell me about this lay-away plan, and then he broke away from me again, and I listened to her for a few seconds and then I finally told her that he had darted off again and I had to go find him. Q. You don't know how long he had been gone? A. I don't know how many seconds he had been gone, but it seemed like a very short time, but I did interrupt her conversation to tell her that I would have to find him before we continued, and I thought he had gone behind the counter, probably—" R. pp. 18, 19.

cony.[2] She testified that she pulled Jada off the railing on three occasions. Each time she set him back four to six feet from the railing. She stated that she knew "there wasn't anybody looking after him"; "knew he was only about two years old" and "didn't have the ability or discretion to understand the danger"; knew that "it was dangerous"; "was afraid that he might fall"; explained that she left him unattended because— "Well, I was busy. I was a saleslady and I had to take care of my job"; "made no effort to talk to the store manager or locate anybody to take charge of him"; had seen children playing on the balcony and knew that "employees would have to get them away from up there"; had told other children not to climb on the balcony.

Mrs. Finley insisted, however, that whenever she saw Jada on the railing she "always got him down". She did not see him immediately before his fall and, according to her testimony, some twenty minutes elapsed between the last time she removed Jada from the railing and the child's fall.

The testimony showed that the employees who worked on the balcony recognized that the railing attracted children and was a danger to small children. Mrs. Meek, who worked with Mrs. Finley, testified: "I have taken children off of there several times, and it was a thing that attracted children to it."[3] Mrs. Meek said that it was "of practically daily occurrence" and that this "danger" to children was "a matter that was dis-

2. "Q. What efforts had you made to get him off of that railing? A. Well I was waiting on a customer at the time whenever he climbed on it. I saw him so I taken him down and told him to stay down.

"Q. And then what did you do? A. Well I went on about my business. * * * both times that I taken him off I set him away from the rail. The third time was when he didn't want me to get him off. I took him off anyway. * * *

"Q. And you just left him there the third time within four feet of that balcony that you had had to pull him off of three times? A. I moved him out far enough that I thought maybe he wouldn't go back over to it. * * *

"Q. But still where there was nothing to keep him from going to it? A. No, because there wasn't anybody looking after him.

"Q. There was no one up there—you knew his mother wasn't with him? A. I didn't know his mother.

"Q. You knew there was no one up there looking after him? A. That's right.

"Q. And you knew he was only about two years old? A. Yes, sir.

"Q. And you knew that he didn't have the ability or discretion to understand the danger of getting on that thing, didn't you? A. He probably didn't or he wouldn't have kept climbing up there.

"Q. You knew he didn't know the danger of it, didn't you? That was your idea of it wasn't it? A. I imagine that's about it.

"Q. And you knew that it was danger-

ous for him to be up there is the reason you got him off three times? A. I was afraid he might fall.

"Q. The last time why didn't you get hold of somebody to take charge of him? Why did you leave him there unattended? A. Well I was busy. I was a saleslady and I had to take care of my job. * * *

"Q. You knew that there was a possibility or a probability that he might try to get back on the balcony a fourth time? A. He could have.

"Q. And you realized that, didn't you? A. Yes.

"Q. And you made no effort to talk to the store manager and find his mother or locate anybody to take charge of him, did you? A. No." R. pp. 94, 95, 96, 97, 98.

3. "Q. During those three years that you worked there in the store, before this accident happened to Jada Thacker on January 22, 1955, tell the jury whether or not during those three years you had any trouble keeping children off of that balcony and climbing upon it, or not? A. Yes, sir, I did have. I have taken children off of there several times, and it was a thing that attracted children to it, and I did have to take them off several times.

"Q. Was that a matter there, or not, of practically daily occurrence, children getting on that balcony? A. Yes, it was.

"Q. Tell the jury whether or not it was a matter that was discussed among the employees, before this happened, of the J. C. Penney, as to children climbing up and down that balcony and the danger of their falling? A. Yes, it was." R. pp. 42, 43.

cussed among the employees". She was sure that Mr. Lavy, the manager, realized it since "his desk was just a little ways from it, from where his desk was he could also see the children". Mrs. Finley said that she had seen children playing on the balcony railing and she and other "employees would have to get them away from up there".[4] She had never been instructed by the manager to keep children away but she "always did it on [her] own, if [she] saw one".

The case was tried before a jury in the District Court for the Western District of Texas and defendant's motion for an instructed verdict was overruled, but after failing to reach an agreement the jury was discharged. Defendant then filed a motion for a summary judgment and a motion for a judgment on the same grounds that had been urged in asking for an instructed verdict. The district judge granted both motions and ordered entry of judgment in favor of the defendant, apparently on the basis that as a matter of law there was no breach of duty and no negligence shown.

## II.

When a person on the property of another is injured as the result of an alleged dangerous condition of the premises, liability depends upon (1) the existence and scope of the defendant's duty of care to the plaintiff and (2) whether the defendant breached this duty. The relationship between the parties is a material factor in determining the existence and scope of the duty. Conventionally, courts divide visitors into three classes and calibrate the duty owed according to whether a plaintiff is a trespasser, licensee, or invitee.[5]

4. "Q. You had had trouble from kids playing on that balcony before, hadn't you? A. They would go up and look over and maybe put their foot on the bottom of the rail to look over, but I had never seen one on top of it.
"Q. On many occasions you had seen them up there playing on this balcony that he fell off of? A. They had played on the balcony.
"Q. A lot of people had. A. At different times.
"Q. In other words, you employees would have to get them away from up there, isn't that right? A. That's right.
* * *
"Q. You had seen kids playing near that balcony there at least a year before this accident, hadn't you? A. Yes.
"Q. Ever since you started working you knew that was a place that was fascinating and attractive to young children, didn't you? A. Yes, I imagine it would have been." R. p. 99.

5. There is not much doubt as to what makes a visitor a trespasser (one on land without occupier's permission). Restatement of Torts Sec. 329; Prosser, Law of Torts, Sec. 76; 2 Harper and James, Torts, p. 1435, Sec. 27.3. Or a licensee (one on land with the occupier's permission but for his own purpose not connected with the occupier's interests). Restatement of Torts, Sec. 330–331; Prosser, Law of Torts, Sec. 77; 2 Harper and James, Torts, p. 1470, Sec. 27.8. There is some doubt, and more discus-

sion, as to what makes a visitor a member of the favored invitee class. Bohlen, The Basis of Affirmative Obligations in the Law of Torts, 1905, 53 U.Pa.L.Rev. 209; Bohlen, The Duty of a Landowner Towards Those Entering His Premises of Their Own Right, 1920, U. Pa.L.Rev. 142. Prosser, Business Visitors and Invitees, 1942, 26 Minn.L.Rev. 573; Comment, 1944, 22 Texas L.Rev. 489. The Restatement of Torts speaks of an invitee as a "business visitor" who is "invited or permitted to enter or remain on land in the possession of another for a purpose directly or indirectly connected with business dealings". Rest., Torts, Sec. 332, Sec. 343a. The theory of the Restatement is that "the duty of affirmative care to make the premises safe is imposed upon the man in possession as the price he must pay for the economic benefit he derives, or expects to derive from the presence of the visitor". Prosser, Law of Torts, Sec. 78, p. 454. An alternative and more liberal theory, supported by a majority of courts, is that "the basis of liability is not any economic benefit to the occupier, but a representation to be implied when he encourages others to enter to further a purpose of his own, that reasonable care has been exercised to make the place safe for those who come for that purpose. This idea of course underlies the stress laid upon 'invitation' * * * but * * * invitation is not enough without the circumstances that convey the implied assurance. When premises are thrown

■ Under Texas law a storeowner who invites the public to his store, knowing that women constitute a heavy percentage of his customers, knowing too that frequently a child will accompany a parent to the store, is "under [an] obligation to extend to the child the protection of an invitee". Carlisle v. J. Weingarten, Inc., Tex.Civ.App.1941, 120 S.W. 2d 886; Id., 137 Tex. 220, 152 S.W.2d 1073 at page 1077.[6] Unlike the attractive nuisance cases, where the difficulty is in finding an affirmative duty of due care to a trespasser,[7] there is no doubt as to the existence of such a duty imposed on the defendant with respect to Jada as an invitee.

### III.

■ What is the scope of the duty here? A storeowner is not an insurer of an invitee's safety, but he is under the affirmative duty of exercising due care under all circumstances. The Restatement speaks of the liability of a land-owner to business visitors "to exercise reasonable care to make the land safe for [their] reception".[8] Restatement, Torts, Section 343. Harper and James state: "The occupier must use due care not to injure the plaintiff by negligent activity and also to warn him of latent perils actually known to the occupier. In addition, the occupier owes the duty to inspect his premises and to discover dangerous conditions * * * [as] part of a larger duty of reasonable care to make the premises reasonably safe." [9] 2 Harper and James, Law of Torts, Section 27.12, p. 1487.

■■ A storeowner is under a duty to use due care to make the premises safe for all invitees—for a young child as well as for an adult. He owes the same degree of care to both, but, of course, different precautions must be taken for children, if the storeowner's conduct is to measure up to the standard of due care under all the circumstances.[10] "The

open to the public the assurance is ordinarily given". Prosser, Law of Torts, Sec. 48, p. 455. Texas courts quote the Restatement with approval but adopt the liberal test of an express or implied invitation. "The most essential factor to be considered in determining this issue [the status of a visitor] is whether the premises were public or private." Carlisle v. J. Weingarten, Inc., Tex.Civ.App. 1941, 120 S.W.2d 886; Id., 137 Tex. 220, 152 S.W.2d 1073.

6. "A child taken by a mother or nurse to a shop is a business visitor." Restatement, Torts, Sec. 332.

7. See Footnotes 8, 9, 18, 19 and 20.

8. " * * * the visit of a business visitor is or may be financially beneficial to the possessor. Such a visitor is entitled to expect that the possessor will take reasonable care to discover the actual condition of the premises and either make them safe or warn him of dangerous conditions. As stated in § 342, a possessor owes to a bare licensee only the duty to exercise reasonable care to disclose to him dangerous defects which are known to him and are likely to be undiscovered by the licensee. Toward the business visitor, the possessor owes the additional duty to exercise reasonable care to make the land safe for the reception of his visitor or, at the least, to ascertain the actual condition of the land so that by warning the visitor thereon, he may give the visitor an opportunity to decide intelligently whether or not to accept the invitation or permission." Restatement, Torts, sec. 343.

9. " * * * This is the most prominent difference between the rights of invitees and those of licensees, and its prominence has sometimes obscured the fact that the invitor's duty of reasonable inspection is only part of a larger duty of reasonable care to make the premises reasonably safe. As in negligence cases generally, the invitor may be held even though there was no default in inspection, if the injury may be traced to faulty construction or other negligence in creating the dangerous condition, or to the failure to take reasonable precautions to protect invitees from dangers foreseeably attendant on the arrangement or the use of the premises. * * * " Harper and James, Law of Torts, Sec. 26.12, p. 1487.

10. "Proprietors of premises who invite children on them must use care to keep them reasonably safe, not omitting precautions against injury from childish impulses. * * * This doctrine is but one phase of the wider doctrine that an owner must keep his premises reasonably safe for the use of people whom he invites to come on them—an application

proprietor of a store or shop who invites or induces children to come upon the premises must use care to keep the premises reasonably safe for children. Account is taken, in determining the precautions necessary to be exercised, of childish impulses as well as the fact that certain dangerous conditions in the store or shop may attract small children to their injury." 38 American Jurisprudence 799, Negligence, Section 177. Age and the ability of a child to realize danger,[11] the peculiar attraction certain installations have for children,[12] childish impulses, the knowledge that young children frequently in the past had been attracted to an installation are all circumstances to be taken into account in determining whether a storeowner has complied with his duty of care to an invitee who is a child. If J. C. Penney, through its employees, had knowledge that children frequently played on the balcony and were attracted to climbing the balcony railing, and if there was a foreseeable probability of injury by children climbing the railing and falling, defendant was under a duty to avoid the danger by taking precautions to make the premises reasonably safe. Further, even without the actual knowledge of the peril to children generally or to Jada particularly,

defendant was "under an affirmative duty to protect invitees against [dangers] which with reasonable care * * * might [be] discover[ed]". Prosser, Law of Torts, Sec. 78, p. 453. If therefore the construction of the railing was such that a reasonable person might expect young children on the balcony to be attracted to climbing the railing, defendant was under the duty to use due care to discover this danger and to protect its invitees against the peril.

■ Whether J. C. Penney Company breached its duty to use due care to make its store reasonably safe for young invitees is the basic issue in this case. We believe that there was a sufficient showing of a breach of duty for the issue to be decided by a jury.

### IV.

■ The issue in this case is confused by the misleading emphasis the defendant and the trial court placed upon a parent's duty to a child. (1) The defendant starts with the major premise that the primary duty of protecting a child rests on the parents; that the care of the child does not shift from the parent to the appellee because of the existence of a danger. There is no disagreement over this principle. (2) The defendant

of the general doctrine with special reference to the nature of children, and in accordance with the principle that what constitutes due care in a given instance depends on the degree of danger to be apprehended. * * * Because children are more heedless and have less discretion and capacity to avoid danger than adults, more care must be exercised by others for their safety." Hillerbrand v. May Mercantile Co., 1909, 141 Mo.App. 122, 121 S.W. 326, 328.

11. "Age is * * * a factor which may bear on the visitor's capacity to look after himself * * * So it seems quite misleading for Judge Smith to ask: "Why should innocent children have greater rights than innocent adults, in respect to damage resulting from the nature of the premises upon which they enter without permission?" The landowner must use due care as to both infants and adults, as must one who drives an automobile on the highway;

but due care may involve much more precaution taken for the infant." Hudson, The Turntable Cases in the Federal Courts, 1923, 36 Harv.L.Rev. 826.

12. "One of the factors affecting the care to be exercised may be the presence of children on the scene. In this case the accident happened in the infants' and children's wear department of a large store. While there is no evidence of the number of children visiting that department, it is clear that children under the age of six years were invited to go there and that the defendant storekeeper should have expected their presence. Children of such an age ordinarily could not appreciate the danger of putting their fingers in or around moving machinery, but would be attracted by it, especially if it were bright, and would be likely to investigate with their fingers anything to which they were attracted." Takashi Kataoka v. May Department Stores Co., 1943, 60 Cal.App.2d 177, 140 P.2d 467, 470, 471.

states as the minor premise that Mrs. Thacker was derelict in her duty; the danger was open and obvious, she was warned, and she had knowledge of the danger. (3) The defendant concludes therefore that it is not liable. This conclusion is a non sequitur. The syllogism proves only that Mrs. Thacker was negligent, that her negligence was a contributing cause but not the sole proximate cause of the accident. The negligence of parents may not be imputed to their young children, in Texas as in almost all states.[13]

A mother, by nature and law, does have a primary duty to protect her children and that duty does not shift to anyone else. But a storeowner is also under a duty. A storeowner must provide safe premises for invitees; he must inspect his store and exercise due care to protect invitees from injury from any dangerous condition in his store. The duties of parent and storeowner are concurrent. They are not mutually exclusive, a conclusion one would come to from the defendant's argument.

In an action by a parent for his own benefit to recover damages which he has suffered because of injury to his child, the parent's contributory negligence will bar recovery.[14] But where recovery is sought for the benefit of the child, the parent's negligence is irrelevant to the question of the existence and scope of a storeowner's duty to the child.[15] It

13. In Gulf Production Co. v. Quisenberry, Tex.Com.App.1936, 128 Tex. 347, 97 S.W.2d 166, 168 (adopted by the Sup. Ct.), where the suit was brought by a minor through his father, the Court said: "If it be conceded that the parents were negligent in not always being in the child's immediate presence and controlling his every movement, such negligence of the parent is not imputable to the child to bar the latter's recovery. Galveston, H. & H. Ry. Co. v. Moore, 59 Tex. 64, 46 Am.Rep. 265; Western Union Tel. Co. v. Hoffman, 80 Tex. 420, at page 424, 15 S.W. 1048, 26 Am.St.Rep. 759; Williams v. Texas & P. R. Co., 60 Tex. 205; Gulf, C. & S. F. Ry. Co. v. McWhirter, 77 Tex. 356, at page 361, 14 S.W. 26, 19 Am.St.Rep. 755; Wininger v. Ft. Worth & D. C. Ry. Co., 105 Tex. 56, 143 S.W. 1150."

14. "A parent's negligence is not in Texas ordinarily imputable to a child plaintiff, * * * but, since the parents here sue for their own use and benefit, they may be defeated by their own contributory negligence, * * * When parents are complaining of the negligence of the innkeeper, their own negligence which contributes to the injury is a good defense to their suit. Negligence is not attributable as such to a child of 2½ years. * * * The conduct of such a child being natural, spontaneous, and instinctive, is like that of an animal, and is similarly to be anticipated and guarded against by those charged with any duty in respect to the child. * * * The innkeeper and the parents perhaps ought equally to have anticipated the danger of a child trying to get into the window, but the duty of inspecting the screen is not the same. The responsibility for the premises is primarily on the innkeeper, and the guest may generally assume that they are safe." Baker v. Dallas Hotel Co., 5 Cir., 1934, 73 F.2d 825, 827.

15. In Kuemmel v. Vradenburg, Tex.Civ. App.1951, 239 S.W.2d 869, 874, the Court held that it would be improper to submit an issue on the parent's negligence being the sole proximate cause. The Court said: "But this is a case where a parent's negligence may not be imputed. The parent's failure to behave as an ordinary prudent person, including his foresight, is not a matter of inquiry because the substantive law prohibits imputation of negligence to an unreliant child. * * * We have been cited to some cases in which the parents' failures were submitted as sole proximate cause. An examination of those cases fails to reveal that such issue was objected to or that the correctness of the submission was urged on appeal. Northern Texas Traction Co. v. Thetford, Tex.Civ.App., 28 S.W.2d 906, reversed Tex.Com.App., 44 S.W.2d 902; Southwestern Bell Telephone Co. v. Doell, Tex.Civ. App., 1 S.W.2d 501; Ross v. Haner, Tex. Civ.App., 244 S.W. 231; Id., Tex.Com. App., 258 S.W. 1036. This matter was directly passed upon in the case of Terrell Wells Health Resort v. Severeid, Tex.Civ.App., 95 S.W.2d 526, and the issue of sole proximite cause in a case such as this was rejected and held improper. The court there held that the issue amounted to the imputation of negligence. We see no reason to depart from the rule as there announced. Accord, Kelley v.

is applicable only on the issue of breach of the duty of due care. The gist of negligence is the foreseeability of harm, using the objective standard of a reasonable man. A storeowner or other occupier of land may assume that a mother when accompanied by a young child will protect the child from an open and obvious danger. But that is simply one of the circumstances to be weighed with all of the other circumstances in deciding whether a particular defendant on the facts of the particular case is negligent.

Here the most important of these other circumstances is that shortly before Jada's fall Mrs. Finley removed Jada three times from the balcony railing. She knew, and through her the defendant knew, that the child had escaped from his mother and was in danger. Appellants and appellee contend vigorously over the applicability of the doctrine of discovered peril to Mrs. Finley and Jada. In a narrow sense, the doctrine of discovered peril may be inapposite since Mrs. Finley did not see the child immediately before he fell in time to save him.[16] But the basis for the application of the doctrine is a perilous situation in which foreseeable harm may be prevented by reasonable action of a defendant under a duty to act. We see no reason to quibble over the meaning, boundaries, and applicability of the doctrine.[17] "Discovered peril" provides a rationale for certain cases that may be loosely grouped together. That is all. Its applicability here in its pristine formulation is not the crux of this case. We believe that without relying on any legalistic cantrip, a

jury might find that Mrs. Finley knew that Jada was in a perilous situation, and find also that her failure to return the two-year old child to his mother or to place him in the hands of a responsible employee was conduct that just does not measure up to the standard of due care imposed on a storeowner and his employees.

There are other circumstances to be weighed, some relating to a storeowner's duty to children generally and some relating to the duty to Jada in this case. (1) Where there are ladies' dresses sold, customers will bring their children. (2) The balcony and railing did attract children. (3) Young children frequently climbed on the balcony. (4) It was "a daily occurrence" for employees of the store to remove children, because the railing was dangerous. (5) Employees working on the balcony in the past had discussed the danger. (6) Jada was at an age when a child is active but is not capable of realizing peril. (7) Jada was not under the immediate control of his mother, as in American Fire & Casualty Co. v. Jackson, 5 Cir., 1951, 187 F.2d 379. (8) A solid, higher railing could be utilized at relatively little additional cost. (9) It is common knowledge that on childish impulse the best behaved children do sometimes escape from the most careful mothers. A syllogism in logic or a theorem in natural law does not outweigh facts a man is faced with; the life of the law is still experience.

In this case the railing was dangerous only to children too young to realize its danger. If children are too

Texas & P. Ry. Co., Tex.Civ.App., 149 S.W. 349; Galveston, H. & H. Ry. Co. v. Moore, 59 Tex. 64; Restatement 11, Tort §§ 449, 452."

16. The doctrine of discovered peril involves three principal elements. "(1) The exposed condition brought about by the negligence of the plaintiff; (2) the actual discovery by defendants' agents of his perilous situation in time to have averted—by the use of all the means at their command, commensurate with their own safety—injury to him; and (3) the failure thereafter to use such

means." Turner v. Texas Company, Tex.Com.App.1942, 138 Tex. 380, 159 S.W.2d 112, 115 (opinion adopted by the Supreme Court).

17. Appellee urges that the second element disappeared when the child was away from the balcony, since actual discovery of the perilous situation in time to avert injury is essential to application of the doctrine. But how long was Jada in peril? Only just before or at the moment when he climbed the railing the last time? Or during the time he was unattended and twice climbed the railing?

young to realize a danger, some of them will be too young to be controlled by their mothers. The very fact that imposed on the defendant a duty to warn parents, paradoxically perhaps, puts the defendant on notice not to rely on the parents' ability to control their children. We think that where young children are invitees, a storeowner owes a duty to all such children—and must take precautions to protect those with careless parents as well as those with careful parents.

## V.

Defendant finds support for its position in American Fire and Casualty Co. v. Jackson, 5 Cir., 1951, 187 F.2d 379 and in Stimpson v. Bartex Pipe Line Co., Tex.ComApp.1931, 120 Tex. 232, 36 S. W.2d 473 (adopted by the Sup.Ct.). In the Jackson case an infant, less than one year old, pulled away from her mother as they were walking upstairs and fell through an opening in the stair rail 27½ inches above the floor. This Court, speaking through Judge Hutcheson, Judge McCord concurring and Judge Russell dissenting, held that the defendant was not liable, and quoted with approval the language of a Louisiana case [187 F. 2d 384] : "We do not base freedom from liability upon the contributory negligence of the parents, but solely upon the fact that there is no negligence in the owner of the building in failing to foresee that the parents will not protect their very young children against such dangers." This language, if considered in the light of the facts in the Jackson case, supports the point we make in this opinion, that the duty imposed on the parent is an element in determining whether the defendant should foresee the probability of in-

jury to a child from the parent not protecting his child against an obvious danger, but the existence of this concurrent duty imposed on the parent does not in itself relieve an occupier from his duty of due care to an invitee. In the Jackson case the child was a young infant under the immediate control of the mother; the defendant could not foresee the danger. In the instant case a jury could hold that the defendant did in fact know, or should have known, that children of Jada's age, not under the immediate control of their parents (as in the Jackson case) and too young to realize the danger, were attracted to the balcony railing.

Stimpson v. Bartex Pipe Line Co., Tex. Com.App.1931, 120 Tex. 232, 36 S.W.2d 473, 477, (Ad. by Sup.Ct.), the principal case relied on by appellee, is distinguishable. In that case the question was whether the petition stated a cause of action for injuries a six-year old boy received from a fall from pipes around an oil storage tank. As in this case, the only danger was the danger of falling. The Court held that the petition did not state a cause of action. (1) But the child in that case was a trespasser, making it necessary for the plaintiff to resort to the attractive nuisance doctrine.[18] Here there was no necessity for the plaintiff to resort to the doctrine, because the Thacker child was a business invitee who was entitled to be on the premises. Jada Thacker was invited to go on Penney's premises, which were represented as safe for children; young Stimpson was not invited, his presence on the Bartex premises was not known to the owner, and the Bartex property was not represented as safe for (trespassing) children. The

18. Generally speaking, an occupier owes no duty of care to trespassers to make land safe for their reception. In the attractive nuisance or turntable cases, however, " * * * courts reasoned that if the child came on to the land because of an artificial, highly dangerous, unguarded thing certain to attract young children, and if the child was of an age when it would 'follow a bait as mechanically as a fish,' without appreciation of its danger, then the possessor's act of creating or maintaining such a condition was equivalent to an 'invitation,' and the child became an invitee to whom the duty of care was owed. Once this hurdle had been jumped, the concept of negligence became relevant. This became known as the 'attractive nuisance' or 'turntable' doctrine; it made the possessor liable if plaintiff could show both allurement and negligence. * * *" 2 Harper and James, Law of Torts, Sec. 27.5, p. 1449.

Stimpson case sets out the principle that the doctrine of attractive nuisance does not extend to an installation necessary and proper in a business and having no intrinsic danger. This principle would have validity in a case where a child is a trespasser. In order to escape the legal consequences of trespass and establish a duty of due care, courts have to find "an artificial condition highly dangerous to trespassing children" and satisfy other conditions that will raise the status of the child from a trespasser to an invitee. The Court in effect held that the Stimpson child could not be treated as an invitee under the attractive nuisance doctrine and therefore the defendant owed no duty to provide safe premises for the child.[19] The question whether defendant breached the duty of due care was never reached. (2) In all cases involving claims against an occupier, age of the injured child is of major importance. To recover, the child must be too young to realize the danger. In the Stimpson case the actual holding of the court was that the child was old enough to understand the danger. The Court said: " * * * The facts pleaded merely show a danger which was obvious and patent even to a child of tender years, as such a child in the very

nature of things is thoroughly capable of appreciating the fact that, if it falls from a structure of the height of the oil tank, it would in all probability receive an injury." Here the case revolves around the central fact that Jada did not comprehend the danger.

In the Stimpson case, the court stated that it is a "salutary rule which imposes a duty to guard a child of such immaturity as to be unable to appreciate patent and unconcealed dangers upon the parent instead of the landowner". If this were a correct statement of the law, there would never be recovery in any case involving child trespassers, licensees, or invitees where the danger is unconcealed. If too young to realize the danger, the duty imposed on the parent would bar recovery; if old enough to realize the danger, the child's competency would bar recovery.

Whatever effect the Stimpson case once had, its effect is very limited now. Banker v. McLaughlin, 146 Tex. 434, 208 S.W. 2d 843, 8 A.L.R.2d 1231, approves and adopts the Restatement rule as to a landowner's liability.[20] Commenting on the Banker case as changing the law of Texas, Eaton v. R. B. George Invest-

---

19. "A careful inspection of the petition discloses that it is lacking in at least one important essential in order to bring the case within the attractive nuisance doctrine. There is no allegation showing that the structure maintained on appellee's premises, which it is claimed was unusually attractive and inviting to children of tender age, was inherently dangerous, or of such a nature as to lead or attract a child onto it and to another object inherently dangerous. Not only does the petition fail to allege such a state of facts, but it affirmatively appears from the averments therein that the only danger to which children of tender age were subjected by the maintenance of the structure in question was the obvious and patent one of falling therefrom, a danger which is common to every ordinary object of any substantial height above the ground." Stimpson v. Bartex Pipe Line Co., 120 Tex. 232, 36 S.W.2d 473, 475, 476.

20. "§ 339. Artificial Conditions Highly Dangerous To Trespassing Children.
"A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if

"(a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and
"(b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and
"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and
"(d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein." Restatement, Torts, Sec. 339.

ments, 1953, 152 Tex. 523, 260 S.W.2d 587, points out that when the conditions as set forth in the Restatement are satisfied, the distinction between trespassers, licensees, and invitees is abolished as to young children and the landowner is under a duty of ordinary care to protect them from injury. In Massie v. Copeland, 1950, 149 Tex. 319, 233 S.W.2d 449, 452, the Court said that of the four conditions " * * * probably the most important is that the child, because of his tender years, does not realize the risk or danger. * * * The absence of this essential element was the reason for the decision in Stimpson v. Bartex Pipe Line Company, 120 Tex. 232, 36 S.W.2d 473, 477, that the plaintiff's petition stated no cause of action. * * *"

## VI.

In its charge the Court summarized the law "as it applies to the allegations and defenses" as follows:

"The primary duty of protecting children, by nature as well as by law, devolves on the parent who has the legal power to control the action of the child and whose moral duty is to keep the child from climbing on or around places where danger from fall exists. If, therefore, you find from a preponderance of the evidence that on January 22, 1955, and prior thereto, it appeared reasonably probable to the management of the J. C. Penney Company store in Odessa, Texas, that the parent of a child of tender age who brought such a child into its Odessa store would in all reasonable probability control the action of such child or prevent such child from climbing upon the railing around the balcony or would keep such child from being exposed to the danger of

falling from a railing after climbing on it, then your verdict will be for the defendant, J. C. Penney Company, and against the plaintiff.

"If you find from a preponderance of the evidence that the accident in question was without the negligence of either the plaintiff or the defendant, then the same would be an unavoidable accident, * * *"

The Court instructed the jury:

" * * * if you find and believe from a preponderance of the evidence that the defendant's agents, servants and employees, failed to give warning or notice to Jada Thacker's mother that he was in danger, if he was, and if you further find and believe from a preponderance of the evidence that the failure of the defendant's agents, servants and employees to give such notice to the said Jada Thacker's mother that he was in danger, if he was, constitutes negligence, and if you further find and believe from a preponderance of the evidence that such negligence, if any, was a proximate cause of the plaintiff's damages and injuries, then you will find for the plaintiff * * *."

The Court charged that Jada Thacker, "being not more than two years of age, could not have realized the risk of danger, if any". But the Court refused a requested charge that "the contributory negligence of the mother is not a defense" and did not point out, as it should have, that the negligence of the mother cannot be imputed to a child of Jada's age.

 The Court's emphatic statement that it is the mother who has "the primary duty of protecting children by nature as well as by law"[21] and the other in-

21. Appellee's brief states that the trial court's instructions were based on the Stimpson case and on an A.L.R. annotation, Attractive Nuisances, 36 A.L.R. 42. The annotation is to United Zinc & Chemical Co. v. Britt, 1922, 258 U.S. 268, 42 S.Ct. 299, 66 L.Ed. 615, "a much criticized" case (Prosser, Torts, p. 640), apparently overruled in Best v. District of Columbia, 1934, 291 U.S. 411, 54 S.Ct. 487, 78 L.Ed. 882. In the Britt case the Court held that the child was a trespasser at the time she entered on defendant's property, and therefore there was no duty of due care to keep the land safe, even from hidden dangers. Stimpson is substantially similar. The actual language of the trial court in the instant

structions and omissions in the charge taken together, were an open invitation to the jury to disregard the defendant's negligence because of the mother's negligence. In view of the Court's charge, it must have been difficult for the jury *not* to find that the mother's knowledge of the open danger and the defendant's reliance on the mother controlling her child were all that mattered.

In Daigle v. Louisana Power and Light Company, 5 Cir., 1957, 247 F.2d 227, 232, a truck driver ran over a child of five. The driver saw from a distance of one hundred feet that the child was one of a group of five or six playing in the street and that her back was turned. The district judge stated in his charge to the jury that: "it is a very terrible carelessness to let people of tender age like that play in the streets in any fashion." This Court, speaking through Judge Hutcheson, held:

> "The language of this charge stating to the jury that they had the right to determine whether to allow such play was terrible carelessness was an unintended but clear invitation to the jury to find the parents' negligence instead of any negligence of the defendant to have been the real cause of the injury. Such a charge was particularly unfortunate in this case since there was no evidence to warrant a finding that these particular parents had violated common sense rules of safety or behavior for the injured child and the older sister.

"We think that, under the applicable law, it was incumbent on the trial court clearly and plainly to instruct the jury as to the care that is required of a motorist who sees children of such tender age that they may do the unexpected to control his vehicle to prevent injury to such children as he passes them. We think this concept of the law was not adequately presented to the jury and that, because it was not, appellants are entitled to a new trial."

We think that in the case before us, as in the Daigle case, the trial judge erred in inviting the jury to find that the parent's negligence rather than the defendant's negligence caused the accident.

## VII.

In the attractive nuisance cases the threshold difficulty is in finding a duty of due care to a trespasser. There is no such difficulty here. The Thacker child was a business visitor or invitee. Defendant owed the child, therefore, the duty of affirmative due care under all the circumstances.

"Trespasser" and "invitee" are empty terms until they are applied to the facts of the particular case. They are simply another way of saying that negligence cases involving visitors, like other negligence cases, turn on the foreseeability of injury. In the Stimpson case, for example, the likelihood of injury was remote. It is another story in other turntable cases where, because of the likelihood of children being present and subject to harm, a jury may find that the

---

case follows almost exactly language of the annotation. This in turn follows exactly the language of court in Holstine v. Director Gen., 1922, 77 Ind.App. 582, 134 N.E. 303, which relied on a law review article written sixty years ago. Jeremiah Smith, Liability of Landowners to Children Entering *Without Permission*, 1897, 11 Harv.L.Rev. 349, 371. Smith was very careful to refer only to "uninvited children". He recognized that there is a different question when "a legal duty rested on the defendant, and he failed to perform it. The only doubt in such a case is, whether

he should be permitted to escape liability by reason of the concurring fault of the parent. But here [where there are uninvited children] the very question at issue is whether the law ought to impose a duty upon him. And in deciding that question it is fair to weigh the fact that the moral fault of the parent is, in a great majority of cases, one of the antecedents in the chain of courses leading up to the catastrophe". 11 Harv.L.Rev. 373. See Hudson, The Turntable Cases in the Federal Courts, 1923, 36 Harv.L. Rev. 826; Green, Landowner v. Intruder, 1923, 21 Mich.L.Rev. 495.

defendant failed to forestall an injury he should have foreseen. Here, in final analysis, calling a child of two a "business visitor" is just a way of saying that a storeowner, more than ordinary landowners, has to expect children on his premises. A reasonable man cannot ignore this fact. If therefore a storeowner has an installation that he knows or should know may be dangerous to a young child, he must take reasonable precautions to prevent harm.

If the only interests in this case were Mrs. Thacker's and J. C. Penney's we might agree with the trial judge. But Jada has an interest. And more important than Jada's is society's interest in this case. Society is interested in preserving children from harm, certainly from exposure to a danger they are too young to realize, when that danger is in a store to which they are invited and when the danger may be eliminated with relatively little inconvenience to the storeowner. We think that, whether or not parents have a high and inescapable moral duty to take care of their children, it is against public policy for a storeowner to open his store to children and escape his duty to provide safe premises.

In balancing the competing interests of a landowner and a visitor injured as a result of a condition of the premises, the quasi-sovereignty of an owner or occupier of land must yield to the superior interests of society in protecting the life and limb of future citizens; at least to the extent of having the jury decide, in a case such as this, whether the occupier's conduct measures up to the standard of due care to provide safe premises for children who are business visitors or invitees.

Judgment for the defendant is Reversed and remanded.

HUTCHESON, Chief Judge.
I concur in the result.

On Petition for Rehearing.

Before HUTCHESON, Chief Judge, and RIVES and WISDOM, Circuit Judges.

PER CURIAM.

It is ordered that the petition for rehearing filed in the above styled and numbered cause be, and the same is hereby

Denied.

HUTCHESON, Chief Judge (concurring specially).

When the opinion in this case was handed down, I was content, without stating my reasons, to note my concurrence in the result, that is in the judgment reversing the case for trial anew. Upon further consideration, I think I should now make clear my reasons for so concurring by stating distinctly the part of the opinion I did and do not concur in as well as the part in which I did and do concur, and why I think the judgment should be reversed.

The part of the opinion I did not concur in is the apparent holding that it was negligence in the store owner to build a balcony as this one was built with a railing made open so that shoppers could see the store below and so as to make it a pleasant place for shoppers to come for purchases. I think the law did not and does not require a store-keeper to wall all balconies in to keep some possible child from climbing on a railing any more than to wall off his escalators, his stairways, his chairs and his tables, and if it were not for *the Finley testimony*, I would say no case for a jury was made out. I do not think the law goes anywhere near as far as I think the majority opinion does in giving directions to store-keepers that they must make their stores safe for two year old children when the supposed lack of safety consists not in defective construction or negligent maintenance but in a construction which is neither out of the ordinary nor in any way defective. I think we had just as well say that, because a small child if allowed to get away from his mother will get hurt by a fall down an escalator or out a window or off a table or chair, a store owner can't have any of those things without a guard standing by.

The part of the opinion I concur in is the part dealing with Mrs. Finley's testimony set out in the majority opinion. I am convinced that it was for the jury to say whether, when she discovered the peril to that particular child resulting from its intransigent persistence in respect of the balcony, she exercised due care under the circumstances testified to by her in not taking the child to its mother if she could be found or to some place of safety. For this reason and only for this reason, I concur in the view that the case ought not to have been taken from the jury and that it should be remanded for a new trial on this issue.