WILLIAM MILLIKEN *vs.* WEYBOSSET PURE FOOD MARKET.
WILLIAM MILLIKEN, JR., *p. a. vs.* SAME.

NOVEMBER 20, 1945.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J.   These are actions of trespass on the case for negligence arising out of an accident suffered by William Milliken, Jr., two years and four months of age, at about 11:30 a. m. on November 20, 1942, in the grocery and market

of the defendant on Weybosset street in the city of Providence. The infant plaintiff fell through an open trap door in the floor of the store and suffered the injuries for which damages are claimed. One case is brought on behalf of the infant plaintiff for his injuries, and the other by his father for expenses incurred as a result of such injuries.

In the superior court the two cases were tried together to a jury, which returned a verdict of $8000 for the son and $1400 for the father. Defendant's motion for a new trial in the son's case was denied if, within five days, he remitted all of his verdict in excess of $2500, but otherwise was granted; and in the other case the motion was denied, if, within the same time, the father remitted all of his verdict in excess of $1200, but otherwise was granted. No remittitur was filed in either case.

The cases are before us on exceptions by the respective plaintiffs therein and by the defendant. In each case the plaintiff relies upon his exception to the decision granting the defendant's motion for a new trial if the remittitur specified in such decision was not filed. In each case the defendant relies upon its exceptions to the denial of its motion for a directed verdict, to rulings on the admission of evidence during the trial, to the refusal of requests to charge, and to portions of the charge. Since recovery in the father's case depends on the defendant's liability for the son's injuries, we shall first direct our attention solely to the son's case.

The negligence relied upon in the declaration of the infant plaintiff, hereinafter referred to merely as the plaintiff, is that the defendant failed to exercise due and reasonable care in maintaining the floor of its premises in that "a certain trap door on said premises and *close* to the aisles ordinarily used by patrons was left open", as a result whereof the plaintiff fell through said trap door and was severely injured. (italics ours)

It appears in evidence that on the day in question the plaintiff was with his mother, who entered the defendant's premises for the purpose of purchasing certain foods; that,

after making some purchases, she, holding the child by the hand, then went to the cashier's cage near the center of the store to pay her bill; that, in order to get the money from her billfold, she released her hold on his hand and almost immediately thereafter heard the cry of the child, who had fallen through the open trap door.

As one enters defendant's store at its front and goes from the front toward the rear, there are two main aisles, seven feet wide, with a fruit counter between the aisles and with the cashier's cage, where plaintiff's mother was at the time of his fall, to the rear of that counter. Proceeding along the left-hand aisle towards the rear of the store, the fruit counter is on the right and a long delicatessen counter is on the left. Five feet beyond the end of the last-mentioned counter and approximately in line with it is the dairy counter. From this opening between these two counters the uncovered floor of the store extends for a distance of a little over eight feet from the left side of the main aisle to the left wall of the store, where, as is suggested by the plaintiff, merchandise was on display at the time of the accident. Whether the entrance to this area, which we will hereinafter call the cross aisle for convenience, was open or substantially blocked at that time is the subject of conflicting evidence. The testimony for the plaintiff on this point is that there was nothing to prevent any one from entering that cross aisle, while the defendant's testimony is to the effect that entrance thereto was substantially blocked by a movable display stand, which it was its custom, both before and after the accident, to set up at that place until a cashier's cage was placed there.

The trap door, from which stairs lead to the cellar, is attached to the floor of the store by hinges and is located directly in back of the end of the delicatessen counter near the left side of the cross aisle as one enters it from the main aisle. There was no gate, guard rail or other obstruction at this point. The plaintiff's mother and another of his witnesses testified that the opening in the floor for the trap door extended beyond the end of the delicatessen counter and into

the cross aisle by about four inches. On the other hand, three witnesses for the defendant testified that the trap door did not extend into the cross aisle; two of them testified that such door was in back of the delicatessen counter and was six to eight inches away from the side aisle; while another, a civil engineer, who made a plan of the place of the accident, which plan was admitted in evidence without objection, testified that the side of the opening in question was in back of the delicatessen counter and about four inches away from the side of the cross aisle.

The trap door is 32 inches long by 22 inches wide. When raised, it rests against the shelving behind the delicatessen counter, which shelving extends into the cross aisle some two feet beyond the end of that counter. The plan in evidence also shows that a sign 10 x 14 inches, with the words: "Danger Watch Out for Cellar Stairs", is affixed to the above-mentioned extension of the shelving and faces one who enters the cross aisle.

The defendant urges two contentions in support of its exception 6, which relates to the denial of its motion for a directed verdict: first, that the plaintiff was a mere licensee at the time of the accident and that, therefore, "since the trap door was not in any part of the premises to which the public was invited, it owed no duty to the minor plaintiff nor to any customer in the store"; and, second, that "if there were an invitation to the minor plaintiff, it was a qualified and conditional one. That is, the defendant could assume that a child of such an age would be accompanied and taken care of by a responsible adult." These contentions are opposed by the plaintiff, who contends that in the circumstances of this case the defendant owed him the duty that is owed to an invitee and that the extent of the invitation and the breach of the duty were questions of fact for the jury.

Whether a person is a licensee or an invitee is a question of considerable difficulty in a large number of cases. The shadings in the facts which give rise to one or the other of these relations make it necessary to determine each case on

its own facts. Furthermore, in passing on a motion for a directed verdict, the trial justice, under our firmly established rule, is bound to view the evidence most favorably to the adverse party and to draw from such evidence all reasonable inferences in favor of that party.

The general rule applicable to storekeepers who invite the public to enter their premises is that they are bound to use reasonable care to maintain, in a condition that is reasonably safe for the purposes of the invitation, that portion of the premises to be used by persons who come within the scope of the invitation. According to the evidence in the instant case plaintiff's mother was clearly on the premises on defendant's invitation in furtherance of their common interests. This the defendant admits, but it contends that such invitation did not extend to her small son, the plaintiff here. We cannot agree with this contention in the circumstances before us.

Where a mother is invited to come and trade in a grocery and market, the storekeeper cannot ignore the probability, established by daily practice and experience, that she may be required to bring a young child with her in order to avail herself of the invitation. Such invitation, therefore, may impliedly extend to a child whom the mother deems it necessary to bring with her to accomplish her purpose. In such circumstances the child, as well as the mother, is in the store as an invitee. Of course, the mother is bound to use reasonable care for the protection of the child and the latter must exercise such care as one of its age is ordinarily expected to exercise, if the storekeeper is to be held liable for an injury to the child which proximately results from the former's negligence.

Ordinarily, the storekeeper's invitation does not warrant its invitees to stray behind counters or to use the passageways that are plainly set apart, by construction or otherwise, for use by his servants in the conduct of the business. Typical of this class of cases is the recent Maryland case of *Pellicot* v. *Keene,* 181 Md. 135, which the defendant strongly

urges us to follow in the instant case. There the court held that the storekeeper was not liable for injuries to a child who wandered behind a counter and fell through an open trap door, which was three and one half feet from a passageway that was only one foot eight inches wide and that was used solely by defendant's servants.

The plaintiff distinguishes the *Pellicot* case from the instant one and argues that the case of *Grogan* v. *O'Keeffe's, Inc.,* 267 Mass. 189, is more nearly in point. In that case the storekeeper was held liable to a child who had come to the store with its mother and who was injured by falling through an open trap door which was clearly in the floor of that part of the store which was ordinarily used by its customers.

The evidence in the instant case is materially different from that in either of the cases just mentioned. Here, according to the testimony for the plaintiff, the trap door opening extended about four inches into a cross aisle five feet wide that was open to customers, while the testimony for the defendant placed that opening in back of the delicatessen counter and from four to eight inches away from that aisle. If there was evidence from which the jury could reasonably have found that the invitation by this defendant to its customers extended to the cross aisle in question, it would then become a further question of fact whether the location of the trap door was so close to that aisle as to make the aisle potentially unsafe for use by the customers while the trap door was open. See *Stone* v. *Smith-Premier Typewriter Co.,* 48 Wash. 204; *Nelson* v. *F. W. Woolworth & Co.,* 211 Ia. 592; *MacDonough* v. *F. W. Woolworth Co.,* 91 N. J. L. 677.

The conflicting evidence in the instant case presented three basic questions of fact for submission to the jury on the issue of liability. First, at the time of the accident, was the entrance to the cross aisle substantially blocked by a movable display stand, as defendant contended, so that it was reasonably obvious that whatever passageway remained and the space in back of the movable stand were reserved by the defendant solely for use by its servants? Second, if that

entrance was not so blocked, but was free and unobstructed, as the plaintiff contended, were customers expressly or impliedly invited to use that cross aisle? Third, if there was such an invitation, was the floor of that cross aisle, while the trap door was open, maintained by the defendant in a reasonably safe condition for the purposes of the invitation? In view of the conflicting evidence on these points, which, on a motion to direct a verdict, must be considered most favorably to the adverse party, defendant's motion for a directed verdict was properly denied and its exception 6 is therefore overruled.

Defendant's exceptions 4 and 5 refer to the allowance of certain testimony in *rebuttal* from two witnesses for the plaintiff. One testified that he went to defendant's store two or three weeks after the accident and that at that time there was nothing between the delicatessen counter and the dairy counter. The testimony of the other witness, who went to the store on April 6, 1944, was to the same effect. This evidence was in contradiction of the testimony of witnesses for the defendant who testified, in substance, that it was the custom and practice of the defendant to have at all times, both before and after the accident, a display stand in the greater part of the space between the two above-mentioned counters until that space was later occupied by a cashier's cage. In view of such issue thus previously raised by the defendant, which issue bore directly on the question as to whether the cross aisle was open to customers at the time of the accident, we find no prejudicial error in the admission of the testimony about which the defendant now complains. These exceptions are overruled.

Defendant's exception 7 relates to the denial of certain requests to charge. The substance of these requests was fully and correctly covered by the trial justice in his general charge. This exception is overruled.

Defendant's exception 8 is to that part of the charge wherein the trial justice instructed the jury that if they should find that there was no extension of the delicatessen

counter by a movable stand, as the defendant contended, then it would be a question of fact as to whether the defendant was negligent in respect to the location of the trap door. This exception is answered by what we have said earlier in this opinion. It is without merit and is therefore overruled.

Defendant's exception 3, which was briefed and argued together with exceptions 6, 7 and 8, is also overruled for like reasons. Other exceptions of the defendant not specifically mentioned herein having been considered and found to be without merit, all of defendant's exceptions are overruled.

We will now consider the plaintiff's exception to the decision of the trial justice granting the defendant a new trial unless the plaintiff remitted all of the verdict in excess of $2500. As a result of the accident, the plaintiff unquestionably received a head injury from which he suffered in varying degree for some fourteen months. The medical testimony is replete with technical terms, which, to the lay mind, naturally tend to magnify the injury. It is clear from the evidence now before us, however, that the plaintiff had completely recovered at the end of that time. In so far as appears from that evidence, there was no disfigurement or probability of permanent or future disability because of such injury.

While the plaintiff was being treated for the head injury, a protrusion of his left shoulder blade was discovered. This condition was apparently due to a bony mass that had formed under that blade and such mass was subsequently removed by an operation. The conflicting evidence on this point shows a medical controversy over the question whether or not this protrusion was attributable to the accident. The trial justice apparently concluded that the weight of the evidence did not support a finding that the shoulder injury was a result of the accident and that the verdict of the jury was therefore grossly excessive in that, in his opinion, it included therein a very substantial amount as damages for that injury.

The plaintiff argues that, in fixing the remittitur, the trial justice unduly reduced the amount of compensation which the plaintiff was reasonably entitled to for the head injury and, further, that he overlooked material medical evidence in concluding that the condition of plaintiff's shoulder was not caused by the accident. These contentions have led us to examine both the evidence and the rescript of the trial justice with great care. After such examination, we are of the opinion that the trial justice did not disregard or misconceive any material evidence on either of the two points urged by the plaintiff. His rescript shows that, following our well known rule that in considering a motion for a new trial the trial justice must pass his independent judgment upon the weight of the evidence and the credibility of the witnesses, he arrived at his conclusion after a fair consideration of all the evidence in accordance with that rule. Such being the case, his decision is entitled to the weight usually accorded thereto under our practice, even though there may be some difference of opinion as to the amount of the remittitur. In other words, we cannot say that his decision on the question of damages is clearly wrong and therefore the plaintiff's only exception is overruled.

What we have said in this case applies also to the case of plaintiff's father in his action for expenses incurred by him as a result of the injuries to his son. The remittitur ordered by the trial justice in this case represents the money that was expended by the father for the son's shoulder injury.

All of the exceptions of each plaintiff and of the defendant are overruled, and each case is remitted to the superior court for a new trial.

*Sherwood & Clifford, Raymond E. Jordan, Sidney Clifford,* for plaintiffs.

*Frederick W. O'Connell, Francis X. LaFrance, Swan, Keeney & Smith,* for defendant.